U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 OCT 11 PH 1:56

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER MATTHEW MARTINEZ | CIVIL ACTION |
| VERSUS | NO. 05-874 |
| JERRY LARPENTER, SHERIFF, TERREBONNE PARISH, ET AL. | SECTION "J" (3) |

## REPORT AND RECOMMENDATION

Plaintiff, Christopher Matthew Martinez, filed the above-captioned *pro se* and *in forma pauperis* complaint, pursuant to 42 U.S.C. § 1983, against Terrebonne Parish Sheriff Jerry Larpenter, Warden Sonny Hanson, Lt. Thomas Clark, Lt. Ernie Dardar, Cpl. Joseph Lodrigue, Nurse Margie Whitney, Medical Administrator Petie Neal, the Terrebonne Parish Sheriff's Office, the Terrebonne Parish Consolidated Government, the Terrebonne Parish Criminal Justice Complex, and the Terrebonne Parish Criminal Justice Complex Medical Department.

Defendants Whitney and Neal have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[1] Plaintiff was ordered to file an opposition to that motion on or before June 22, 2005, but he failed to do so.[2]

---

[1] Rec. Doc. 14.

[2] Rec. Doc. 15.

___ Fee_____
___ Process_____
X Dktd_____
✓ CtRmDep_____
___ Doc. No._____

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 322-23.

The Court has no duty to search the record for evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). "The

party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas, 136 F.3d at 458. Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996). "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

In his rambling complaint, plaintiff provides a chronological summary of events which have occurred since he was incarcerated at the Terrebonne Parish Criminal Justice Complex on October 31, 2004. Some of the events involve individuals not named as defendants in this lawsuit, and they are recounted for no discernable purpose.

Many of plaintiff's allegations relate to a shoulder problem. Plaintiff states that he had shoulder operations in June 2000 and January 2001 due to a history of recurrent dislocations. As a result, he currently has a screw in the joint. He contends that he now needs a third operation. He further notes that he entered the jail wearing a sling, but the sling was confiscated on November 5, 2004, by Lt. Jason Lirette, who is not a defendant in this case, because he believed plaintiff did not need it.

Plaintiff alleges that he had a "nervous breakdown" in February 2005, and, after being taken to see his mental health doctor, was placed in a cell at the jail where "the crazy and/or trouble-makers go." On February 3, 2005, while disoriented from his mental problems, plaintiff emerged from his

cell wet and naked and was shot with a Taser by Cpl. Lodrigue on the order of Lt. Clark. When plaintiff fell to the ground, he again injured his shoulder. He was roughly escorted back to his cell by Lodrigue and Clark. Clark allegedly struck plaintiff in the face.

On February 7, 2005, plaintiff felt his shoulder dislocate, and he made a request for emergency medical treatment. He was roughly escorted to EMT/Nurse Candy Fanguy by defendant Dardar. Fanguy, who is not a defendant in this lawsuit, said there was nothing wrong with plaintiff's shoulder. Plaintiff then submitted a written request to defendant Neal and was seen by him on February 11. Plaintiff states that an x-ray was taken which showed that the screw in his shoulder was bent. Neal said that he did not know if another operation would be required but that he would obtain an appointment for plaintiff to see a specialist. He was also given another sling, although that sling was also later allegedly confiscated by Fanguy.

Plaintiff also mentions other medical problems for which he believes he did not receive adequate medical attention. For example, plaintiff contends he developed a sore throat from using a contaminated tooth brush and a "strange fungus" from having feces thrown on him by a fellow inmate.

As noted, Nurse Margie Whitney and Medical Administrator Petie Neal have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[3] They argue that they are entitled to judgment as a matter of law because plaintiff's medical records, certified copies of which were attached to their

---

[3] Rec. Doc. 14.

4

motion, clearly show that his claims that he has been denied constitutionally adequate medical care are completely unfounded.[4]

Plaintiff's medical records are voluminous. Those records reflect that plaintiff submitted numerous medical requests, often several times a week. The records also reflect that his requests were not ignored; rather, he was routinely scheduled to see various medical personnel regarding his myriad complaints and was in fact examined and treated. Over the course of his incarceration, plaintiff has received numerous medications for his various ailments, including Abilify, Seroquel, Medrol, Atarax, Flexeril, Doxycycline, Keflex, Ibuprofen, Buspar, Elavil, and Lotrisone cream.

The medical records further reflect that plaintiff was, at best, a difficult patient. Despite his incessant complaints of pains and illnesses, the records contain numerous notations indicating that plaintiff failed to take his medications consistently, refused medications and examinations, was uncooperative with the medical staff, and was found to be hoarding medication on at least two occasions.

Further, the medical records thoroughly document that the conditions of which plaintiff complains in this lawsuit were by no means ignored by medical personnel. For example, after plaintiff was shot with the Taser, he was seen by the medical staff numerous times regarding complaints of shoulder pain. On February 7 and 9, the examinations reveal no problems with movement. A radiology report indicated that an x-ray was taken on February 11, 2005, and showed

---

[4] In his complaint, plaintiff never clearly states why he has named Whitney and Neal as defendants. They assume, as does the undersigned, that they have been named as defendants in connection with plaintiff's claims regarding allegedly inadequate medical care.

that the screw in plaintiff's shoulder had a "slight curvature." An appointment was then promptly requested from the Orthopedic Clinic at the Leonard J. Chabert Medical Center and was scheduled for April 6, 2005. During the interim, plaintiff was observed doing push-ups and not wearing his sling as ordered. At the April 6 appointment at the Orthopedic Clinic, it was determined that no further surgery was required, and plaintiff was instructed regarding an exercise program.

The medical records are replete with plaintiff's numerous complaints regarding a persistent "rash" and further show that he was continually treated for that problem, including being given medications and injections. Although plaintiff voiced repeated frustrations regarding the staff's unsuccessful efforts to cure the rash, the records contain numerous notations of plaintiff's noncompliance with his medication regimen.

It is clearly established that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001) (pretrial detainee); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (convicted prisoner). However, the United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

It is obvious from reading plaintiff's medical records and complaint that he is frustrated from what he perceived to be a lack of quality medical care at the Terrebonne Parish Criminal Justice Complex. However, to the extent that plaintiff is simply arguing that he was not given the best medical care available, that is not the constitutional standard. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992) (the fact that medical treatment "may not have been the best money could buy" was insufficient to establish a constitutional violation); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available). Rather, as noted, the applicable test is whether prison officials were *deliberately indifferent* to plaintiff's serious medical needs. Plaintiff has submitted no evidence whatsoever to support a finding that his serious medical needs were met with deliberate indifference, an essential element of his case which, if absent, renders all other facts immaterial. On the other hand, defendants have submitted the certified and undisputed medical records in this case, reflecting numerous medical examinations and treatments both inside and outside of the prison, which clearly establish that there was in fact no deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

The Court is aware that plaintiff believed that he was being treated incorrectly and that some of the medications prescribed were ineffective in curing his various maladies. However, those facts are not of constitutional significance. A disagreement between an inmate and the medical staff concerning whether certain medical treatment was appropriate generally is not actionable absent exceptional circumstances. Id. Additionally, the mere fact that a prisoner's medical treatment was ultimately unsuccessful does not give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

At best, plaintiff's claims are ones for medical malpractice or negligence, and, as such, are not cognizable in this federal civil rights action. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); see also Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."). Allegations of malpractice or negligence alone are never sufficient to state a claim for constitutionally inadequate medical care. Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999).

For all of the foregoing reasons, as well as the fact that plaintiff has not opposed the motion, the Court finds that the motion for summary judgment filed by Whitney and Neal should be granted. Accordingly, it is recommended that the claims against those defendants be dismissed.

Additionally, the Court notes that several of the remaining defendants are improper. Accordingly, the Court recommends that the claims against the following defendants be dismissed *sua sponte* as frivolous.[5]

---

[5] Plaintiff is a prisoner who filed this lawsuit *in forma pauperis*. Rec. Docs. 3 and 4. Frivolous claims against governmental entities filed by prisoners shall be dismissed by the district court *sua sponte*. 28 U.S.C. § 1915A(b)(1). A similar duty is imposed to dismiss frivolous claims

Plaintiff has improperly named the Terrebonne Parish Sheriff's Office as a defendant. "[A] sheriff's office is not a legal entity capable of being sued ...." Cozzo v. Tangipahoa Parish Council–President Government, 279 F.3d 273, 283 (5th Cir. 2002); see also Causey v. Parish of Tangipahoa, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); Ruggiero v. Litchfield, 700 F. Supp. 863, 865 (M.D. La. 1988). Additionally, the Terrebonne Parish Criminal Justice Complex is an improper defendant. A prison or jail is not a "person" subject to suit under 42 U.S.C. § 1983. See, e.g., Cullen v. DuPage County, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Correctional Facility Administration, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (E.D. Pa. 1976). Lastly, the Terrebonne Parish Criminal Justice Complex Medical Department is not a distinct, juridical entity capable of being sued. Cf. Oladipupo v. Austin, 104 F. Supp. 2d 626, 641-42 (W.D. La. 2000).

## RECOMMENDATION

It is therefore **RECOMMENDED** that the motion for summary judgment filed by Margie Whitney and Petie Neal be **GRANTED** and that plaintiff's claims against those defendants be **DISMISSED WITH PREJUDICE.**

---

in actions filed *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B)(i). When evaluating the frivolousness of an action, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker v. Koonce, 2 F.3d 114, 115 & n.6 (5th Cir. 1993).

It is **FURTHER RECOMMENDED** that plaintiff's claims against the Terrebonne Parish Sheriff's Office, the Terrebonne Parish Criminal Justice Complex Medical Department, and the Terrebonne Parish Criminal Justice Complex be **DISMISSED WITH PREJUDICE** as frivolous 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___7___ day of October, 2005.

DANIEL E. KNOWLES, III
**UNITED STATES MAGISTRATE JUDGE**